**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DR. TERRY SANDERS,

       Plaintiff,

v.                                      CIVIL ACTION NO.   2:26-cv-00375

UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff Dr. Terry Sanders's Motion for a Temporary Restraining Order and Preliminary Injunction. [ECF No. 5]. In his complaint, Plaintiff sought an order compelling the Defendant United States Drug Enforcement Administration ("DEA") to adjudicate his pending renewal application and enjoining the DEA from impairing his registration under the Controlled Substances Act. [ECF No. 1, at 14–15]. After he filed his complaint, Plaintiff's DEA registration was renewed, mooting this action.

Still, Plaintiff asserts that this court can grant him relief in the form of enjoining the DEA from taking adverse action against his registration based on the 2022 DUI incident; declare that the renewal application has been fully adjudicated and the matter closed; restore the effective date of the renewed registration from May 14, 2026, to February 28, 2026; and award attorneys' fees and expenses. [ECF No. 10, at 2, 9].

In response to Plaintiff's motion, Defendant DEA contends that the court lacks Article III jurisdiction because Plaintiff's registration was never denied, suspended, or revoked; remained

active while the timely renewal application was pending; and has now been renewed. [ECF No. 9, at 1]. The DEA further represents that it has not issued an order to show cause ("OTSC") concerning Plaintiff's current registration, although Chief Counsel's consideration of an internal request for such an order remains pending. *See id.* at 6.

For the reasons explained below, I conclude that Plaintiff's claims either fail to present a justiciable case or controversy within this court's Article III jurisdiction or fail to identify final agency action reviewable under the APA. The Complaint, [ECF No. 1], is therefore **DISMISSED** for lack of subject-matter jurisdiction, and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, [ECF No. 5], is **DENIED as moot**.

## I.    BACKGROUND

The following facts are drawn from Plaintiff's Complaint and supporting materials, the DEA's response and supporting materials, and Plaintiff's reply. Except where otherwise indicated, the relevant facts are undisputed. Plaintiff Dr. Terry Sanders is an emergency physician who serves rural communities in West Virginia. [ECF No. 1, ¶¶ 17–18]. On June 1, 2022, Plaintiff pleaded guilty in West Virginia state court to misdemeanor "Driving Under the Influence Causing Bodily Injury" ("DUI") and "Failure to Obey a Traffic-Control Device." *Id.* ¶¶ 21–25. He was not, however, charged with any drug or controlled substance crime. The incident resulted in proceedings before the West Virginia Board of Medicine ("WVBOM"), and Plaintiff voluntarily ceased practicing medicine and enrolled in a medical-professional health program. *Id.* ¶¶ 23–24, 27.

By December 14, 2022, the WVBOM resolved the matter through a consent order that publicly reprimanded Plaintiff and placed his medical license on probation pending his completion of monitoring, evaluation, toxicology screening, counseling, psychiatric monitoring, and

professional assessment. *Id.* ¶¶ 28–30. Plaintiff successfully completed the program on September 11, 2023, after which he returned to unrestricted medical practice. *Id.* ¶¶ 31–35.

In 2023, while the WVBOM consent order remained in effect, Plaintiff applied to renew his DEA registration to dispense controlled substances. *See id.* ¶ 36; 21 U.S.C. §§ 822(a)(1), 823(g). The DEA inquired about the 2022 DUI incident, Plaintiff responded to that inquiry, and the DEA renewed his registration. [ECF No. 1, ¶¶ 37–39].

On February 10, 2026, Plaintiff timely submitted another application to renew his DEA registration, which was scheduled to expire on February 28, 2026. *Id.* ¶ 40. The DEA accepted the application and renewal fee, and Plaintiff disclosed the 2022 DUI incident. *Id.* ¶¶ 41–42. Plaintiff alleges that comparable renewal applications generally are processed within several days. *Id.* ¶ 43. The DEA assigned Investigator Kevin Joestlein to investigate the application on or about February 11, 2026. [ECF No. 9, at 2]. After submitting the application, Plaintiff retained counsel regarding the DEA's alleged failure to act upon Plaintiff's renewal application. [ECF No. 1, ¶¶ 44–45].

On February 25, 2026, Plaintiff and Investigator Joestlein spoke by telephone concerning the DUI incident as part of the registration renewal process. [ECF No. 1, ¶ 46]. Plaintiff confirmed that he had been impaired by alcohol during the incident. *Id.* ¶ 47. On February 27, 2026, Investigator Joestlein emailed Plaintiff to confirm that "no other substances were involved," and Plaintiff answered affirmatively. *Id.* ¶¶ 48–49. Plaintiff maintains that his answer was truthful because, to his knowledge, no court, medical board, evaluator, or licensing authority had concluded that controlled substances contributed to the DUI incident. *Id.* ¶ 50. Within two days of that conversation, Investigator Joestlein contacted the West Virginia State Police Forensic Laboratory and learned that controlled substances had been detected in Plaintiff's system following the DUI incident. [ECF No. 9, at 2–3].

3

On March 9, 2026, Investigator Joestlein informed Plaintiff by telephone that his registration would remain active beyond its February 28 expiration date while the DEA completed its investigation. [ECF Nos. 9 at 3; 9–1 ¶ 10; 9–6 at 1]. Investigator Joestlein followed the telephone conversation with an email attaching 5 U.S.C. § 558(c)[1] and stating: "[the] DEA has not made a final determination on your application. Therefore, your registration is still considered active." [ECF No. 9 at 3; 9–1 ¶ 10; 9–6 at 1].

On March 19, 2026, Plaintiff informed Investigator Joestlein that the Kentucky Board of Medical Licensure ("KBML") also had placed his Kentucky medical license on probation because of the DUI incident. [ECF Nos. 9 at 4–5; 9–1 ¶¶ 16–17]. On April 6, 2026, Investigator Joestlein obtained the KBML agreed order. [ECF Nos. 9 at 4; 9–1 ¶¶ 17–18; 9–14].

DEA thereafter scheduled an in-person meeting for May 1, 2026. [ECF No. 1 ¶ 54]. The parties dispute what Investigator Joestlein communicated about the likely disposition of the renewal application. Plaintiff alleges that Investigator Joestlein accused him of dishonesty and stated that the registration would not be renewed because Plaintiff had misrepresented the substances involved in the DUI incident. [ECF No. 1 ¶¶ 55–57].

---

[1] The statute states

> **(c)** When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
> **(1)** notice by the agency in writing of the facts or conduct which may warrant the action; and
> **(2)** opportunity to demonstrate or achieve compliance with all lawful requirements.
> When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

5 U.S.C. § 558(c).

4

At this same meeting, Plaintiff asked DEA either to approve his application or issue a formal denial that he could contest through the administrative process. [ECF No. 1 ¶ 60]. During the meeting, DEA presented Plaintiff with the information obtained during its investigation and provided him with a DEA-104 Voluntary Surrender Form. [ECF Nos. 9 at 5; 9–1 ¶ 22]. According to DEA, Plaintiff did not dispute the documents presented to him, although he declined to surrender his registration voluntarily. [ECF Nos. 1 ¶ 62; 9–1 ¶ 22]. That same day, Investigator Joestlein submitted an internal request to DEA's Office of Chief Counsel seeking authorization to commence an OTSC proceeding concerning Plaintiff's registration. [ECF Nos. 9 at 4–5; 9–1 ¶ 23].

On May 8, 2026, Plaintiff's counsel sent Investigator Joestlein a letter requesting that DEA renew the registration or issue an OTSC by May 15, 2026. [ECF Nos. 1 ¶ 63; 1–8]. On May 14, 2026, Investigator Joestlein consulted with DEA's Office of Chief Counsel, updated DEA's Registration Information Consolidated System to reflect "Order to Show Cause Requested to CC," and approved Plaintiff's renewal application effective that day. [ECF Nos. 9 at 5–6; 9–1 ¶ 25]. DEA did not immediately notify Plaintiff of the approval because agency personnel were determining whether the registration had been properly renewed while Chief Counsel considered the internal request for an OTSC. [ECF Nos. 9 at 6; 9–1 ¶¶ 26–27]. Because DEA had not notified Plaintiff of the approval, Plaintiff filed this action on June 1, 2026. [ECF No. 1]. He alleged that DEA's failure to communicate a decision had caused substantial professional, economic, and reputational harm, including the loss of a contract to provide emergency medical services. [ECF No. 1 ¶¶ 65–67]. Plaintiff filed the pending Motion for a Temporary Restraining Order and Preliminary Injunction on June 2, 2026. [ECF No. 5].

On June 3, 2026, after further internal consultation, DEA notified Plaintiff that his renewal application had been approved. [ECF Nos. 9 at 6; 9–1 ¶ 27]. On June 4, 2026, this court directed

DEA to respond to Plaintiff's motion. [ECF Nos. 7, 8]. DEA filed its response on June 11, 2026. [ECF No. 9]. It represented that Plaintiff's registration had never been denied, suspended, or revoked; that DEA had treated the registration as remaining active while the renewal application was pending; and that the renewed registration remained active. *Id.* at 1, 6. DEA further represented that no OTSC had been issued, although Chief Counsel's consideration of Investigator Joestlein's internal request may still be pending. *Id.* at 5–6.

Now Plaintiff asks the court to: (1) enjoin DEA from taking adverse action against his registration based on the 2022 DUI incident; (2) declare that the renewal application has been fully adjudicated and the matter closed; (3) restore the effective date of the renewed registration from May 14, 2026, to February 28, 2026; and (4) award attorneys' fees and expenses. [ECF No. 10 at 2, 9]. Plaintiff maintains that he lost employment, incurred substantial attorneys' fees, and remains subject to the possibility that DEA may issue an OTSC based on the 2022 DUI incident. *Id.* at 2.

## II.    LEGAL STANDARD

Federal courts possess an independent obligation to determine whether subject-matter jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Friedler v. Stifel, Nicolaus & Co.*, 108 F.4th 241, 245 (4th Cir. 2024). Federal Rule of Civil Procedure 12(h)(3) directs that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A dismissal for lack of Article III jurisdiction is without prejudice. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

Article III standing restricts federal judicial power to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish standing and the requisite case or controversy, a plaintiff must demonstrate a concrete, particularized, and actual or imminent injury; a causal connection fairly

tracing that injury to the defendant's challenged conduct; and a likelihood that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (en banc). Standing must exist for each claim and each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922–23 (4th Cir. 2022).

Article III's case-or-controversy requirement must remain satisfied throughout the litigation. A claim that depends on contingent future events may be unripe, while intervening events that make it impossible for a court to grant effectual relief may render a claim moot. *Texas v. United States*, 523 U.S. 296, 300 (1998); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citing *North Carolina v. Rice,* 404 U.S. 244, 246 (1971) (*per curiam*)). Federal courts likewise lack authority to issue advisory opinions addressing hypothetical disputes or possible future conduct. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

## III.   DISCUSSION

DEA challenges this court's Article III jurisdiction in its response to Plaintiff's motion. [ECF No. 9 at 1]. The court must resolve that challenge first. Accordingly, the court will consider whether each count and requested form of relief presents a justiciable case or controversy. I conclude that none does.

### A. Article III Standing

First, I find that Plaintiff's assertion of future, speculative injury fails to establish standing. "[A]llegations of possible future injury" are insufficient; the threatened injury must be "certainly impending," or there must be a substantial risk that it will occur. *Clapper v. Amnesty International USA*, 568 U.S. 398, 409, 414 n.5 (2013); *Beck v. McDonald*, 848 F.3d 262, 271–72 (4th Cir. 2017)

(requiring a plaintiff seeking prospective relief to establish an ongoing injury or a sufficiently imminent threat of future injury). Although a completed injury may support a claim for damages, prospective equitable relief requires a real and immediate threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–06 (1983).

Here, Plaintiff alleges that DEA's review of his registration caused lost employment and income, impaired his ability to practice medicine and provide emergency care, damaged his professional reputation and hospital relationships, and interfered with credentialing. [ECF No. 1, ¶ 102]. He also alleges that he incurred substantial attorneys' fees and remains subject to the possibility that DEA may initiate an OTSC proceeding based on the 2022 DUI incident. [ECF No. 10, at 8].

Plaintiff has not established an injury arising from any legal lapse, denial, suspension, or revocation of his registration. DEA treated the registration as remaining effective while the application was pending, expressly informed Plaintiff of that status, and ultimately approved the renewal. [ECF No. 9, at 1]. Plaintiff therefore never lost his legal authorization to prescribe controlled substances under the registration because of an adverse DEA decision. Nor do litigation expenses independently establish the injury necessary to create Article III jurisdiction over the underlying dispute. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).[2]

For these reasons, I find that this court lacks Article III standing.

---

[2] Plaintiff contends that, although the registration remained legally effective, it appeared expired in a pharmacy system and therefore could not be used in practice. [ECF No. 10, at 5]. Even if this circumstance caused concrete economic or professional harm, Plaintiff has not shown that the injury is fairly traceable to DEA. The record does not establish that DEA owned or controlled the relevant pharmacy system, entered an inactive designation into that system, or directed any pharmacy, hospital, or credentialing entity to reject Plaintiff's registration. Nor does Plaintiff explain how the prospective relief requested would restore transactions, employment opportunities, or professional relationships allegedly lost during the disputed period. The alleged pharmacy-system consequences therefore do not establish the requisite traceability or redressability either.

### B. Count I—Agency Action Unlawfully Withheld or Unreasonably Delayed

In Count I, Plaintiff alleges that DEA unlawfully withheld or unreasonably delayed adjudication of the renewal application in violation of 5 U.S.C. § 706(1). [ECF No. 1 ¶¶ 68–77]. He primarily seeks an order compelling DEA to approve or deny the application or initiate the administrative process prescribed by the Controlled Substances Act. *Id.* ¶¶ 70–77.

The APA directs an agency to conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *Id*. § 706(1). That authority, however, extends only to a "discrete agency action that [the agency] is required to take." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *accord NAACP v. Bureau of the Census*, 945 F.3d 183, 189–91 (4th Cir. 2019). Section 706(1) may permit a court to require an agency to act, but it does not authorize the court to dictate how the agency must exercise its statutory discretion. *Norton*, 542 U.S. at 65.

Count I no longer presents a live controversy. DEA approved the renewal application and issued Plaintiff a renewed registration. [ECF No. 9 at 6]. An order directing DEA to adjudicate the application therefore would accomplish nothing that has not already occurred. Likewise, a declaration that DEA unlawfully failed to adjudicate the application would not alter the parties' present legal rights or provide the prospective relief sought in Count I.

The court need not decide whether the approximately three-month processing period was unreasonable. Under § 706(1) the court would have been authorized to issue an order compelling DEA to take discrete action it was legally required to take; but it does not authorize an injunction dictating the substantive matters DEA may consider in a separate future proceeding. *See Norton*, 542 U.S. at 63–65. The delay therefore neither presents a live claim for relief nor supports the prospective injunction Plaintiff now requests.

9

The voluntary-cessation doctrine does not alter this conclusion. Ordinarily, a defendant's voluntary cessation of challenged conduct will not moot a claim unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); see *Porter v. Clarke*, 852 F.3d 358, 363–64 (4th Cir. 2017). Here, however, DEA finally adjudicated the particular application whose nonadjudication formed the basis of Count I. DEA cannot again leave that same application pending. A later decision to institute suspension or revocation proceedings against Plaintiff's current registration would constitute separate agency action governed by 21 U.S.C. § 824, not a resumption of the alleged failure to decide the now-approved application.

Accordingly, Count I must be denied as moot.

### C. Count II—Arbitrary and Capricious Agency Action

In Count II, Plaintiff alleges that Investigator Joestlein communicated DEA's position that the registration would not be renewed because Plaintiff had been dishonest about the substances involved in the DUI incident. [ECF No. 1, ¶¶ 78–90]. Plaintiff characterizes that communication as final agency action and asks the court to set it aside as arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2). *Id.*

Judicial review under § 706(2) generally requires final agency action. *See* 5 U.S.C. § 704. Agency action is final when it marks the consummation of the agency's decision-making process and determines rights or obligations or produces legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *NAACP*, 945 F.3d at 189–90.

Investigator Joestlein's alleged statement did not constitute final agency action. It did not consummate DEA's decision-making process, determine Plaintiff's rights or obligations, or produce legal consequences. DEA continued its internal consideration of the application,

10

Plaintiff's registration remained active, and DEA subsequently approved the renewal. [ECF No. 9 at 5–6]. The agency action that actually followed was favorable to Plaintiff rather than adverse.

Because DEA did not deny, suspend, or revoke the registration, Plaintiff identifies no final adverse agency action for this court to set aside as arbitrary, capricious, or contrary to law. Any challenge to a possible future OTSC proceeding depends on agency action that has not occurred. Accordingly, Count II presents no reviewable final agency action under § 706(2).

### D.  Count III—Mandamus

In Count III, Plaintiff seeks mandamus relief under 28 U.S.C. § 1361 compelling DEA to adjudicate the renewal application. [ECF No. 1 ¶¶ 91–96]. Mandamus is an extraordinary remedy available only when the plaintiff demonstrates a clear and indisputable right to relief, a clear duty on the defendant's part to perform the requested act, and the absence of another adequate remedy. *See United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 502, 511 (4th Cir. 1999).

DEA has performed the particular action Plaintiff sought to compel: it adjudicated and approved the renewal application. [ECF No. 9 at 6]. No outstanding duty remains for this court to enforce through mandamus. Any request that the court compel the DEA to issue an OTSC rather than approve the application is also moot because the DEA already approved the application.

Accordingly, Count III must be dismissed as moot.

### E.  Count IV—Injunctive Relief

Count IV seeks temporary, preliminary, and permanent injunctive relief requiring DEA to maintain, restore, or recognize Plaintiff's registration and adjudicate the application through lawful procedures. [ECF No. 1 ¶¶ 97–106]. Injunctive relief is a remedy rather than an independent cause of action, and it cannot survive without a viable underlying claim. *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017).

11

The relief originally requested in Count IV is moot. The Plaintiff's registration was active while the application was pending and has been renewed by the DEA. [ECF No. 9, at 1, 3, 6]. An order requiring DEA to maintain or recognize the registration pending adjudication would provide no relief because the adjudication has been completed and the renewed registration remains active.

Plaintiff also asked the court to enjoin DEA from denying, suspending, revoking, or otherwise impairing the registration without complying with 21 U.S.C. § 824(c). [ECF No. 1 at 15]. That request presents no current controversy. DEA has not denied, suspended, or revoked the registration without the process prescribed by § 824(c). An order directing DEA to comply with that statute in a hypothetical future proceeding would merely instruct the agency to obey existing law and would constitute an advisory opinion. *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 244–46 (1952).

Accordingly, Plaintiff's motion for a temporary restraining order and preliminary injunction, [ECF No. 5], is **DENIED as moot**.

### F. Additional Relief Requested in Plaintiff's Reply

After DEA disclosed that it had renewed the registration, Plaintiff requested additional relief in his reply. He now asks the court to prohibit DEA from taking adverse action based on the 2022 DUI incident, declare that the renewal application has been fully adjudicated and the broader matter closed, and backdate the renewed registration to February 28, 2026. [ECF No. 10, at 2, 9]. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk*, 713 F.3d at 184–85. Accordingly, the court considers the reply insofar as it bears on Plaintiff's request for preliminary relief and the existence of Article III jurisdiction, but the reply does not replace the claims pleaded in the Complaint.

12

1.   Prospective OTSC Proceedings and the "Matter Closed" Declaration

Plaintiff has not established an actual or imminent injury supporting an injunction against a possible future OTSC proceeding. Although he alleges that Investigator Joestlein requested that Plaintiff surrender the registration, accused him of dishonesty, and threatened nonrenewal, DEA did not deny the application. It approved the renewal, and Plaintiff's registration remains active. [ECF Nos. 9, at 6; 9–1, ¶ 25]. DEA has not issued an OTSC, immediate-suspension order, revocation order, or other adverse decision. [ECF No. 9, at 1]. The record does not clearly establish whether Chief Counsel has completed consideration of Investigator Joestlein's internal request. Renewal of the registration, however, did not extinguish DEA's separate authority to investigate a registrant or institute later suspension or revocation proceedings. *See* 21 U.S.C. § 824(a), (c); 21 C.F.R. §§ 1301.36(d), 1301.37. Whether DEA will exercise that authority remains uncertain.

A claim is not ripe when it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300 (citation omitted). The Fourth Circuit considers "the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). A dispute ordinarily is fit for decision when the challenged agency action is final and does not depend on future uncertainties. *Id.*; *see also In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014).

Neither consideration favors immediate judicial review. DEA has not issued an OTSC or otherwise taken final adverse action against the renewed registration. Whether DEA will commence a proceeding remains uncertain, as do the grounds, evidence, and relief that such a proceeding might involve. Withholding judicial consideration imposes no present hardship because Plaintiff's registration has been renewed. If DEA later issues an OTSC, Plaintiff may

13

contest the asserted grounds through the administrative process and seek review of any resulting final decision under 21 U.S.C. § 877.

Granting the requested injunction would therefore require this court to determine, on a hypothetical record, whether DEA could lawfully rely on the DUI incident in a proceeding that may never occur. Article III permits adjudication only of a "definite and concrete" controversy admitting of conclusive relief, not an opinion "advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Such an order would constitute an impermissible advisory opinion concerning possible future agency action. *See Golden v. Zwickler*, 394 U.S. 103, 108–09 (1969); *Trustgard Insurance Co. v. Collins*, 942 F.3d 195, 200–01 (4th Cir. 2019).

The same reasoning applies to Plaintiff's request that the court declare the entire DUI-related "matter closed." That relief would go beyond recognizing that DEA adjudicated the renewal application; it would prospectively determine that DEA may not institute a separate proceeding against Plaintiff's current registration. Accordingly, these requests are unripe and seek an advisory opinion.

### 2.  Backdating the Registration

Plaintiff's request to backdate the renewed registration does not present a live, redressable controversy. DEA expressly treated the prior registration as remaining active while the application was pending and informed Plaintiff of that determination. [ECF Nos. 9, at 3; 9–1 ¶ 10; 9–6, at 1]; *see* 5 U.S.C. § 558(c). Changing the effective date printed on the subsequently issued registration therefore would not alter Plaintiff's prescribing authority during the period between February 28 and May 14.

14

Plaintiff also has not identified any continuing pharmacy restriction, credentialing consequence, or other present injury that backdating would remove. Because the record does not connect the alleged pharmacy-system problem to DEA, Plaintiff has not shown that an order directed to DEA would remedy the actions of independent pharmacies, hospitals, or credentialing entities. On this record, the requested date change would not redress a legally cognizable injury.

### G. Attorneys' Fees and Expenses

Finally, Plaintiff is not entitled to attorneys' fees or expenses. Under the Equal Access to Justice Act, a court may award fees to a qualifying "prevailing party" in a civil action against the United States unless the Government's position was substantially justified or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). A party prevails only by obtaining judicially sanctioned relief that materially alters the parties' legal relationship. *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603–05 (2001); *Ge v. U.S. Citizenship & Immigration Services*, 20 F.4th 147, 153–56 (4th Cir. 2021).

Plaintiff obtained no judgment, injunction, consent decree, or other judicially sanctioned relief. DEA's approval of the renewal application was agency action, and Plaintiff does not become a prevailing party merely because that action occurred after this litigation commenced. *See Buckhannon*, 532 U.S. at 605. Nor does the record establish the bad-faith conduct necessary for a fee award under 28 U.S.C. § 2412(c)(2). Because the action is dismissed for lack of subject-matter jurisdiction and Plaintiff obtained no relief by court action, his request for attorneys' fees and expenses is denied.

### IV.    CONCLUSION

For the foregoing reasons, I conclude that Plaintiff's claims either fail to present a justiciable case or controversy within this court's Article III jurisdiction or fail to identify final

agency action reviewable under the APA. The DEA's approval of the renewal application rendered moot Plaintiff's requests to compel adjudication and maintain or restore the registration pending adjudication; the requested backdating would not redress any legally cognizable injury traceable to the DEA; and the requests to prohibit a possible future OTSC proceeding and declare the DUI-related matter closed are unripe and would require an advisory opinion. Plaintiff likewise identifies no final adverse agency action reviewable under 5 U.S.C. § 706(2), and he is not entitled to attorneys' fees or expenses.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(h)(3), the Complaint, [ECF No. 1], is **DISMISSED** for lack of subject-matter jurisdiction, and Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, [ECF No. 5], is **DENIED as moot**. The court **DENIES** Plaintiff's request for attorneys' fees and expenses and **DIRECTS** the Clerk to remove this action from the court's active docket.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:       July 31, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

16